UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CHRIS WEBBER #243057,

        Plaintiff,         Case No. 2:09-cv-255

v.         Honorable Robert Holmes Bell

HOWARD TYREE, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Chris Webber #243057, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Medical Service Provider Howard Tyree, Clara Chosa, Kenneth J. Codere, R.N., Zita Wise, R.N., Health Unit Manager Gloria Hill, Unknown Collins, Medical Director Steve Jeffery, Warden Gary Capello, Jeff Larson, Deputy Warden Linda Tribley, Warden Gerald Hofbauer, Assistant Deputy Warden Unknown Tribley, Resident Unit Manager Ben Mercier, Assistant Regular Unit Supervisor Nichole Dall, Resident Unit Manager Steve Kevern, and Governor Jennifer M. Granholm.

In his complaint, Plaintiff alleges that on February 6, 2009, he filed grievance number AMF 09-02-00659-12D, stating:

> In accordance W/PD 03.02.130-E.R. & X, resolution was attempted through several (Health care kites and check ups) but to no avail grievant (Blood pressure) is elevating more and more. This grievance is being written on (AMF) Health Service Unit for the following reason. Every [sic] since (12/10/08) I have been dealing with high (Blood pressure) every [sic] since the above date when my blood pressure was (153/71) I have been going to health care for blood pressure checks. Now every [sic] since that first check, my blood pressure has not been below (143-) on (1/16/09-1/26/09) I reported to health service through medical kite that I had been experiencing sharp like squeezing pain in my chest- then a funny type pain in the (left) shoulder-shortness of breath on all of the episodes. Now on (1/29/09) during a (Blood pressure) check I reported to (Rn) Clara Chosa that I was having dizzy spells the following morning. This nurse took my blood pressure and it was at that moment (179/85). Every [sic] since (1/29/09) my blood pressure has not been below (161-). On (2/4/09) my blood pressure had elevated to (181/91)-(2/6/09)-(173/92). Time after time I have reported to health service staff that the medication I was on (Propranolol / Inderal) was not working. Now health service (P.A.) Mr. Howard Tyree, is taken his slow time with prescribing a better medication while he is taken his slow time with this, my health

>    is levitating more and more toward the stages of a (heart attack or
>    stroke). Grievant would like to request that health service (P.A.) Mr.
>    Tyree - prescribe a better (Blood pressure) medication or remedies.

(Plaintiff's complaint, p. 3.)

Plaintiff's grievance was denied on March 26, 2009, by Respondent Marie Jordan, who noted that Plaintiff had been evaluated for hypertension medication and was scheduled for re-evaluation. In addition, Jordan stated that the blood pressure report from January 29, 2009, through March 23, 2009, verified the fact that Plaintiff's hypertension was poorly controlled and that his medication was ineffective. Plaintiff was re-evaluated by the medical service provider on March 23, 2009, and adjusted his medication. Plaintiff was scheduled to have his blood pressure checked on a weekly basis, and to have a follow-up appointment on approximately April 6, 2009. Plaintiff filed an appeal of the grievance, which was denied by Jeannie Stephenson, who noted that Plaintiff had been prescribed Vasotec and Tenormin for hypertension, and that his blood pressure was being monitored.

Plaintiff filed a step II appeal, listing his blood pressure findings from December 15, 2008, until February 8, 2009, as evidence that the Inderal was not effective for his hypertension. Plaintiff also stated that he was not given the Vasotec until after he was rushed to the hospital with chest pains on February 8, 2009. Plaintiff's grievance appeals were denied.

On February 8, 2009, Plaintiff filed grievance number AMF 09-02-00692-12E3, stating that Defendants Chosa, Codere, and Wahberg disregarded his high blood pressure readings and complaints of tightness and pain in his chest, as well as dizzy spells, on a number of occasions between January 9, 2009, and February 8, 2009, which necessitated his trip to the hospital. Plaintiff did not receive a timely response, so he filed a step II appeal on March 13, 2009. On March 30,

2009, Stephenson responded by stating that Plaintiff was seen and evaluated by the medical provider on January 27, 2009, for ongoing complaints of chest pain. Plaintiff was seen for blood pressure checks, EKG, chest x-ray, and lab work on January 28, 2009, January 29, 2009, February 3, 2009, February 4, 2009, and February 6, 2009, with no reported chest pain. Plaintiff was referred to the medical provider for blood pressure readings. On February 8, 2009, Plaintiff presented with chest pain and was transported to the local emergency room for evaluation and treatment, where Plaintiff was diagnosed with chest wall pain. Plaintiff alleges that on April 8, 2009, he appealed to step III, stating that the health care providers knew that he complained of chest pain on January 29, 2009, and February 4, 2009, and that if it was not reflected in his medical record, it was merely because they did not record his complaints.

Plaintiff alleges that on February 18, 2009, he filed grievance number AMF 09-02-00826-12D4, stating that Defendant Tyree was disregarding the medical orders of Dr. Engelsjerd that Plaintiff receive blood pressure medication, a stress test, and anti-inflammatory medications. Plaintiff claims that Defendant Tyree told him he was going to order a stress test and anti-inflammatory medication, but that he did not comply with this assurance. On April 19, 2009, Plaintiff received the step I response, which indicated that the emergency room physician had diagnosed Plaintiff with chest wall pain, which is non-cardiac in origin, and that Lodine had been prescribed. Plaintiff was seen again on March 23, 2009, and his blood pressure medication was changed. Plaintiff filed an appeal on April 6, 2009, and on April 30, 2009, Stephenson reiterated that Plaintiff had been diagnosed with chest wall pain, which is non-cardiac in origin. Stephenson further stated:

> Recommendations from the local hospital are recommendations only. Plan of care, including testing and medications are determined by the facility Medical Provider who has access to patient's medical records and is familiar with patient's medical history. An EKG, chest x-ray and lab work have been completed. A stress test has not been ordered at this time. Lodine has been prescribed for chest wall discomfort. Patient is being treated with medication for his hypertension, and blood pressures are being monitored. Review of the medical record indicated his medical needs are being addressed. Patient is encouraged to follow recommendations of care and request follow-up care as necessary.

(Plaintiff's complaint, p. 8.) Plaintiff's subsequent appeals were denied.

Plaintiff states that he filed grievance number AMF 09-02-00802-12E4 on February 17, 2009, complaining that Defendant Wise disregarded complaints of chest pain and tightness, telling Plaintiff that it was probably heartburn. The response to this grievance indicated that a review of the file showed that on the date in question, an encounter was created for the purpose of assessing Plaintiff's blood pressure. There was no record of chest discomfort in the previous hours. Plaintiff's blood pressure was 193/94, which does not meet the standard of abnormal vital signs requiring the a medical practitioner referral. However, Defendant Wise relayed Plaintiff's blood pressure information to the medical practitioner. The grievance respondent concluded that Defendant Wise exceeded the minimum requirements for care in this instance. Plaintiff's subsequent grievance appeals were denied.

Plaintiff states that on March 4, 2009, he filed grievance number AMF 09-03-00995-12E4 stating that Defendant Hill treated him disrespectfully and refused to answer his questions regarding the facility protective order complaint. After Plaintiff told Defendant Hill that she didn't have to speak to him in that manner, she told him to "shut up" and stop his whining or she would

write him a ticket. The grievance response noted that Plaintiff's claims were investigated and were found to lack merit. Plaintiff's subsequent grievance appeals were denied.

On March 6, 2009, Plaintiff filed grievance number AMF 09-03-01040-17A, stating that Defendant Collins told him that if he did not stop harassing the nurses, he would end up in segregation. The response to this grievance notes that Defendant Collins was interviewed and indicated that he only wanted to make Plaintiff aware of how his demeanor with health care staff might be construed. According to the responses to Plaintiff's grievance and subsequent appeals, AMF staff have been advised to use counseling when attempting to resolve minor rule violations.

Plaintiff claims that Defendants Granholm, Tyree, Wise, Jeffery, Hofbauer and Capello, failed to adequately train and supervise their subordinates. Plaintiff also claims that Defendant Larson improperly had Plaintiff transferred from the Baraga Correctional Facility (AMF) to the Marquette Branch Prison (MBP) in retaliation for filing complaints and grievances, and that Defendant Tribley improperly accepted him as a transfer from AMF. Plaintiff claims that on December 16, 2009, Defendant Mercier is actively retaliating against him for filing this complaint and for grievances. Plaintiff also alleges that Defendant Dall has refused to place Plaintiff on the transfer list to go to his proper security level of 4 or lower because of Plaintiff's litigation activities against AMF officials. Plaintiff asserts that MBP is a level 5 prison that only allows 1.2 hours of yard/recreation per day and has many more restrictions. Finally, Plaintiff claims that Defendant Kevern retaliated against Plaintiff for filing the instant complaint, as well as discriminated against him on the basis of his race.

Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants' treatment of him was motivated by a desire to retaliate against him for filing grievances, as well as the instant complaint. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations

of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed grievances or other complaints. Accordingly, his speculative allegation fails to state a claim.

Plaintiff also claims that Defendants' treatment of him violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). As noted above, the allegations in Plaintiff's complaint, as well as the attachments, demonstrate that Plaintiff received frequent and regular medical attention. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Consequently, the court concludes that Plaintiff's allegations do not state a claim under the Eighth Amendment.

Plaintiff also asserts that his due process rights have been violated by his transfer from AMF to MBP, which is a level 5 prison. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The

court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

Furthermore, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be

premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory

official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Granholm, Tyree, Wise, Jeffery, Hofbauer and Capello were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Granholm, Tyree, Wise, Jeffery, Hofbauer and Capello had in this action involve the denial of administrative grievances or the failure to act. Defendants Granholm, Tyree, Wise, Jeffery, Hofbauer and Capello cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Granholm, Tyree, Wise, Jeffery, Hofbauer and Capello are properly dismissed for lack of personal involvement.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  May 17, 2010                                  /s/ Robert Holmes Bell
                                                     ROBERT HOLMES BELL
                                                     UNITED STATES DISTRICT JUDGE